NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0832n.06
Filed: December 10, 2007

Case No. 05-2309

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| LIVING WATER CHURCH OF GOD, d/b/a Okemos Christian Center, a Michigan Ecclesiastical Non-Profit Organization, | ) ) ) ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| CHARTER TOWNSHIP OF MERIDIAN; SUSAN MCGILLICUDDY; MARY HELMBRECHT; BRUCE D. HUNTING; JULIE BRIXIE; STEVE STIER; ANDREW J. SUCH; ANNE M. WOIWODE, in their official Capacities as members of the Meridian Township Board, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellants. | ) ) ) ) | |

BEFORE: BATCHELDER and MOORE, Circuit Judges; HOOD[*], District Judge.

ALICE M. BATCHELDER, Circuit Judge. The Charter Township of Meridian ("Township") appeals the district court's order, following a bench trial, granting a declaratory judgment that the Township's denial of a special use permit sought by Living Water Church of God ("Living Water") violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*., and permanently enjoining the Township from preventing Living Water from proceeding with the construction of a school and church building on its property in conformity

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

with the special use permit. Because we conclude that the Township's denial of the permit did not constitute a substantial burden on Living Water's religious exercise, and therefore did not violate RLUIPA, we reverse the judgment of the district court.

## I. BACKGROUND[1]

Living Water is a small but growing Christian congregation with educational and daycare ministries in Meridian Charter Township, Michigan. Living Water owns a six-acre parcel in the Township. The parcel is zoned RA, single family residential, medium density. The Township's zoning ordinance permits a religious or educational institution in a residential zone only if the institution obtains a Special Use Permit ("SUP"). The ordinance requires a separate and additional SUP to construct a building larger than 25,000 square feet. Therefore, Living Water, like any person or institution wanting to construct facilities larger than 25,000 square feet, would have to apply for an SUP permitting such construction.

In 1994, Living Water applied for an SUP to build a single-story 10,925 square-foot building to use as a sanctuary and daycare for 40 children; in 1995, the Township granted the application and Living Water constructed and now occupies that building. At the time that it obtained the SUP, Living Water discussed with the Township its future plans for the property and explained that the sanctuary was only the first phase of a multi-phase building plan for the property. In 2000, Living Water requested and received an SUP to increase its daycare enrollment to 72 children and build a 28,500 square-foot elementary school for kindergarten through 8th grade. Though Living Water initially sought approval for enrollment of 360 students in its proposed school, the church

---

[1]The Township has not challenged the district court's factual findings, and this recitation, therefore, draws extensively from them. *See Living Water Church of God v. Charter Twp. of Meridian*, 384 F. Supp. 2d 1123, 1125-29 (W.D. Mich. 2005).

2

voluntarily limited enrollment to 280 students at the Township's request. Additionally, Living Water agreed to delay its school day start time so as not to interfere with traffic to nearby schools, to go without athletic fields, and to pay for construction of a deceleration lane to lessen the impact on traffic in the neighborhood. Upon receiving the SUP, Living Water began promoting the school and raising money for its construction. On March 7, 2001, the Township informed Living Water that the SUP would expire on May 19, 2001, unless Living Water obtained an extension on its SUP or began substantial construction on the project.

Prior to May of 2001, the Township had a policy of granting extensions on SUPs, and because Living Water had not yet begun construction, it timely requested an extension. But by this time, the Township had obtained new legal counsel who, on April 27, 2001, issued a legal opinion that denied an extension to another applicant. By letter dated May 9, 2001, the Township denied Living Water's request, stating that "because the Code of Ordinances does not specifically provide for an extension to be granted for special use permits, the Planning Commission can no longer consider requests for extensions." Then, on May 15, 2001, the Township passed a resolution stating that because the zoning ordinance had no provision for extending an SUP, any request for an SUP extension must be treated as an application for a new permit and would be subject to all of the requirements of a new SUP. Because the Township's new policy did not permit an extension of the 2000 SUP, Living Water lost its initial investment of $35,000 or $40,000 in planning documents.

Before submitting a new SUP proposal, Living Water officials met with the Township's planning staff to determine the best way to address the Township's concerns with Living Water's project. In addition to renewing the conditions attached to the 2000 SUP, Living Water agreed to further reduce the number of students who could be enrolled in its school from 280 to 125. On May 21, 2003, Living Water applied for an amendment to its SUP to build a Christian Education Building

3

totaling 34,989 square feet. This proposal exceeded by approximately 6,489 square feet the proposal approved in 2000, but because it included a larger basement, the actual footprint of the building was 1,500 square feet smaller than the earlier plan.

While the Township's Board had the final say on the size of a proposed building, the Township's Planning Commission had authority to approve the use of a property for a school and to provide a recommendation to the Board concerning the size of the proposed building. Accordingly, the Planning Commission conducted two public hearings on Living Water's 2003 SUP proposal and ultimately approved the SUP for a school on the church's property and recommended that the Township Board approve the SUP for a new building that — combined with the existing building — would exceed the 25,000 square-foot limit.

The Planning Commission provided a packet of documents for the Township Board to review, which included a table entitled "Land Area to Building Ratios." This table listed for each of the public and private schools in the Township the size of the building and the area of the parcel of land on which it stood. The ratios were developed for the purpose of reviewing Living Water's application; they have not been applied to any other applicants since their creation.[2]

Neither the Township's zoning ordinance nor its Comprehensive Development Plan provides any sort of standard for determining the appropriate land-to-building ratio for a school. While the Comprehensive Development Plan provides criteria established by the National Education Association, i.e., 10 acres for an elementary school, 20 acres for a middle school, and 40 acres for a high school, these criteria address total acreage, not land-to-building ratios. Moreover, though the

---

[2]The ratios did not reflect the presence or absence of athletic fields, or the enrollment of the schools. It is unclear whether the ratios included such spaces as bus garages or basements. The bulk of the data came from public schools even though public schools are regulated by the state and not subject to municipal land use regulations.

4

Comprehensive Development Plan states that all schools in the Township comply with these criteria, that is not the case. For instance, the Plan does not include an elementary school and high school, which together sit on a 13-acre parcel rather than on the prescribed 50 acres; nor does the Plan include a Montessori school which sits on a 6-acre parcel, rather than the prescribed 10-acre parcel. Although the Township applies a 5:1 ratio for commercial developments and a 3:2:1 ratio for office use, "[t]here are no ratios . . . for non-residential uses permitted by SUP in a residential district such as churches, private schools, nursing homes, day care centers, and fraternity or sorority houses." *Living Water Church of God v. Charter Twp. of Meridian*, 384 F. Supp. 2d 1123, 1128 (W.D. Mich. 2005).

On October 21, 2003, the Board affirmed the Planning Commission's recommendation that the SUP allow "the non-residential use of an appropriately sized school in a residential district" subject to conditions, including a maximum enrollment of 125 students. On the same day, however, the Board denied the SUP for "construction of an addition that results in a building or combination of buildings with a gross floor area of 25,000 square feet or greater." The Board explained that "the size of the proposed church and school facility in relationship to the size of the subject site is out of proportion to similarly situated schools and combined church and school facilities within the Township and inconsistent with those review criteria and standards for the granting of a special use permit . . . ."

The school which Living Water wants to house in the proposed Christian Education Building has been in operation since 2001, when Living Water opened its Dominion Leadership Academy, a junior high and high school for boys, at a church building 25 miles away from the Meridian Township church. Because of the difficulties of transporting students this distance, the school, in 2002, moved to a house that was approximately 2.5 miles from Living Water's church in the

5

Township. This site, however, was too small and the church moved the school to a nearby office building, where, because the property is zoned professional/office, the school is not an allowed use. Here, Living Water had to rent gym facilities, and, because the school is off-site and operated by the same staff that runs the church, also encountered difficulties in coordinating the staff.

Because Living Water's overall church enrollment has in recent years grown from 65 to 120, the existing facility does not meet the needs of current members, and lacks space for added services and programs, and seating for new members. The sanctuary in the current facility is a multi-purpose room that the church also uses for daycare and teen activities; because of the challenges of sharing this space, the church has closed the daycare center. The church staff has outgrown current office space, necessitating the rental of additional offices in an off-site facility. Due to the frustration and confusion arising from the space constraints, Living Water has lost current and potential members and its ability to recruit students for its school has been limited.

Following the denial of the 2003 SUP, Living Water brought suit against the Township, seeking a declaratory judgment that the Township violated RLUIPA, among other federal and state laws, and an injunction restraining the Township from enforcing its denial of the 2003 SUP. Living Water also sought damages from the Township, alleging, inter alia, violations of the United States Constitution and Michigan Constitution. The Township removed the action to federal court, and, after the district court entered judgment in favor of Living Water on the RLUIPA claim, the Township timely appealed.

## II. ANALYSIS

The district court held that the Township's denial of the SUP imposed a substantial burden on Living Water's religious exercise, that the denial did not further a compelling governmental interest, and that it was not the least restrictive means of furthering a compelling governmental

6

interest. Accordingly, the court permanently enjoined the Township from preventing Living Water from proceeding with the construction of a school and church building on its property in conformance with the 2003 application for the SUP. We review for abuse of discretion the scope of the injunctive relief granted by the district court; we review *de novo* its conclusions of law and its findings of fact for clear error. *See S. Cent. Power Co. v. Int'l Bhd. of Elec. Workers, Local Union 2359*, 186 F.3d. 733, 737 (6th Cir. 1999).

The Township argues that its denial of Living Water's 2003 SUP proposal did not violate RLUIPA's substantial burden provision. In pertinent part, RLUIPA provides that

> [n]o government shall impose or implement a land use regulation in a manner that imposes a *substantial burden on the religious exercise* of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
> (A) is in furtherance of a compelling governmental interest; and
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1) (emphasis added). This provision applies in any of three circumstances set out in the statute, only one of which is pertinent here, namely, when "the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C).

The Township does not challenge the district court's conclusion that the Township's denial of the SUP sought by Living Water was the implementation of a land use regulation that permitted the Township to make an "individualized assessment[] of the proposed uses for the property involved." *Id*. Nor does the Township challenge the district court's conclusion that Living Water's efforts to develop and use its own property for a religious school, daycare ministry, and other

7

ministries fall within Congress's definition of "religious exercise."[3]  42 U.S.C. § 2000cc-5(7).

The first question before us today, then, is whether the district court correctly concluded that Living Water has demonstrated that the Township's denial of the 2003 SUP proposal imposes a substantial burden on Living Water's religious exercise.  *See* 42 U.S.C. § 2000cc-2(b) (". . . the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.").

The U.S. Supreme Court has not yet defined "substantial burden" as it applies to RLUIPA. Neither does the statute itself contain any definition of the term.  The statute's legislative history, however, indicates that the "term 'substantial burden' as used in this Act is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden or religious exercise."  146 CONG. REC. S7774-01, 7776 (daily ed. July 27, 2000) (joint statement of Sens. Hatch and Kennedy).

In the "Free Exercise" context, the Supreme Court has made clear that the "substantial burden" hurdle is high and that determining its existence is fact intensive.  So, for example, while the Court has held that government action that forces an individual to "choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand" imposes a substantial burden on

---

[3]Congress defined religious exercise as follows,

(A) In general.  The term "religious exercise" includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief.

(B) Rule.  The use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose.

42 U.S.C. § 2000cc-5(7).

that individual's free exercise of religion, *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)[4], the Court has also held that the government's action in constructing a road and permitting timbering through a portion of a National Forest traditionally used by Native American tribes for religious purposes did not impose a substantial burden because the government's action did not coerce individuals into "violating their religious beliefs; nor would . . . governmental action penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988). Similarly, the Court has held that "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial." *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981). But the Court found that a state law proscribing the Sunday retail sale of certain commodities did not impose a burden on the free exercise of religion by members of the Orthodox Jewish faith simply because it operated to make the practice of their religious beliefs more expensive. *Braunfeld v. Brown*, 366 U.S. 599, 605-06 (1961).

In short, while the Supreme Court generally has found that a government's action constituted a substantial burden on an individual's free exercise of religion when that action forced an individual

---

[4]According to Living Water, *Sherbert* "held that the relevant inquiry for substantial burden was whether the government action had a 'tendency to inhibit constitutionally protected activity.'" Appellee's Br. 29 (quoting *Sherbert*, 374 U.S. at 404 n.6.). But *Sherbert*'s holding does not reflect, nor did the Court adopt, a "tendency to inhibit" test. Rather, the *Sherbert* Court focused on whether the state action in question forced the plaintiff to "choose between following the precepts of her religion and forfeiting benefits." *Sherbert*, 374 U.S. at 404. *See also Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. City of W. Linn*, 111 P.3d 1123, 1129 n.7 (Or. 2005) (addressing the same "tendency to inhibit test" that Living Water urges before us and finding that "the [U.S. Supreme] Court did not adopt a 'tendency to inhibit' test in *Sherbert* or use that test to decide *Sherbert* or any other case.").

9

to choose between "following the precepts of her religion and forfeiting benefits" or when the action in question placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Sherbert*, 374 U.S. at 404; *Thomas*, 450 U.S. at 717-18, it has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs. *See Lyng*, 485 U.S. at 449; *Braunfeld*, 366 U.S. at 605-06; *see also Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 702 (E.D. Mich. 2004) ("[C]ourts have been far more reluctant to find a violation where compliance with the challenged regulation makes the practice of one's religion more difficult or expensive, but the regulation is not inherently inconsistent with the litigant's beliefs.").

Because this circuit has not yet spoken on this issue, the parties direct us to several opinions of our sister circuits, which have defined "substantial burden" in a variety of ways.[5] For example, in *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003), the Seventh Circuit found that "a land-use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise — including the use of real property for the purpose thereof within the regulated jurisdiction generally — effectively impracticable." 342 F.3d at 761 (addressing a challenge to the Chicago Zoning Ordinance requiring a religious institution to obtain a special use permit to operate in the city's business, commercial, or manufacturing districts). Several years later, the Seventh Circuit relaxed its definition of substantial burden, finding that where the city's denial of a rezoning permit would require the church to search for other parcels of land or file more applications with the

---

[5]Living Water argues that courts apply a different meaning of "substantial burden" when the plaintiff challenges the ordinance itself (facial attack) rather than the city's implementation of an ordinance, e.g., denying a rezoning application (as-applied attack). While the cases certainly deal with both kinds of challenge, we do not see that other courts draw such a distinction in determining whether a substantial burden exists. We decline to do so here.

10

city, the resulting "delay, uncertainty, and expense" constituted a substantial burden. *See Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005) (addressing a challenge to city's denial of permit to rezone existing tract of land so that plaintiff could build a church). More recently, however, the Seventh Circuit once again returned to *Civil Liberties for Urban Believers*' definition of substantial burden. In *Vision Church v. Village of Long Grove*, 468 F.3d 975, 997-1000 (7th Cir. 2006), the church sought a special use permit to construct a church complex. Noting that under the village's ordinance, the church would be permitted to build a smaller facility — in fact, only slightly smaller than the size that the church had earlier proposed — the court held that the village's conditions on the approval of the permit limiting the size of the buildings, the number of services, the use of surrounding outdoor areas, and the number of major activities to be conducted in the course of the week did not impose a substantial burden on the church's religious exercise.

In a similar vein, the Eleventh Circuit, addressing a challenge to a city zoning ordinance that required the plaintiffs to relocate their synagogues to another part of the city, concluded that a substantial burden

> must place more than an inconvenience on religious exercise; a "substantial burden" is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct.

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004). In *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir. 2004), the Ninth Circuit held that a "'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." 360 F.3d at 1034 (challenging the city's denial of the college's rezoning application). The Fourth Circuit has announced that it "likewise follow[s] the Supreme Court's

11

guidance in the Free Exercise Clause context and conclude[s] that, for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas*, 450 U.S. at 718, and discussing several of the preceding circuit court cases) (inmate's RLUIPA action); *see also Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007) ("For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.") (inmate's RLUIPA action).

Though this circuit has not expressly defined "substantial burden," we have found that a city's action constituted a substantial burden in violation of RLUIPA. In *DiLaura v. Township of Ann Arbor*, 112 F. App'x 445 (6th Cir. 2004) (*DiLaura II*), the plaintiffs sought to use a large house as a religious retreat where guests would come to enjoy prayer and fellowship — without having to pay for their stay. *See DiLaura v. Ann Arbor Charter Twp.*, 30 F. App'x 501, 503 (6th Cir. 2002) (*DiLaura I*). The city designated the plaintiffs' home a bed-and-breakfast and issued a permit for the plaintiffs to operate it, but the district court found that this designation substantially burdened plaintiffs' religious exercise because it required that the plaintiffs require payment by their guests, barred the plaintiffs from serving alcohol (thereby restricting their ability to provide communion wine), and prevented the plaintiffs from serving lunch and dinner to their overnight guests. *DiLaura II*, 112 F. App'x at 446. While not defining "substantial burden," we concluded that "designation as a bed and breakfast would have *effectively barred the plaintiffs from using the property in the*

12

*exercise of their religion* and, hence, the defendants' refusal to allow a variance constituted a substantial burden on that exercise." *Id.* (emphasis added).

The parties in this case do not challenge the constitutionality of this provision of RLUIPA, and we do not address that issue. We note however, that this statute requires the federal courts to walk a thin line. On one hand, RLUIPA's definition of religious exercise covers most any activity that is tied to a religious group's mission, and "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to [an individual's] religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (inmate's RLUIPA action). On the other hand, and in tension with this broader definition of religious exercise, Congress has cautioned that we are to interpret "substantial burden" in line with the Supreme Court's "Free Exercise" jurisprudence, which suggests that a "substantial burden" is a difficult threshold to cross. If the term "substantial burden" is not to be read out of the statute, RLUIPA cannot stand for the proposition that a construction plan is immune from a town's zoning ordinance simply because the institution undertaking the construction pursues a religious mission. *See Westchester Day Sch. v. Vill. of Mamaroneck*, 417 F. Supp. 2d 477, 544 (S.D.N.Y. 2006), *aff'd*, — F.3d —, 2007 U.S. App. LEXIS 24267 (2d Cir. 2007) ("[C]ourts must ensure that the facts warrant protection under RLUIPA, rather than simply granting blanket immunity from zoning laws."). Although RLUIPA assuredly protects religious institutions in their religious exercise, the statute's language indicates that it is not intended to operate as "an outright exemption from land-use regulations." *Civil Liberties for Urban Believers*, 342 F.3d at 762 ("[N]o such free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise.").

Here, we must determine what actual burden the Township has imposed on Living Water's religious exercise. Living Water frames the issue as "a size issue." That is, while the Township granted Living Water's request to build a religious school on its grounds, the Township did not

13

agree to the square footage that the church sought. Living Water argues, essentially, that anything less than the addition of a 34,989 square-foot building on its property prevents it from fulfilling its ministries and missions.

Living Water asks us, in essence, to quantify "substantial burden" in order to determine if the Township's denial of this particular square footage constitutes a violation of RLUIPA. We decline to set a bright line test by which to "measure" a substantial burden and, instead, look for a framework to apply to the facts before us. To that end, we find the following consideration helpful: though the government action may make religious exercise more expensive or difficult, does the government action place substantial pressure on a religious institution to violate its religious beliefs or effectively bar a religious institution from using its property in the exercise of its religion? With that framework in mind, we now turn to the facts before us.

> The district court found that:

> Plaintiff is unable to practice its religious beliefs in its current location because the facilities are too small for the needs of the congregation and staff. Lack of adequate space has already forced Plaintiff to choose between its daycare ministry and its Christian Education ministry. Plaintiff is severely limited in its ability to recruit for the school because of the uncertainty about the future space and the current lack of programming.

> Adding a 14,000 square feet addition for a total of 25,000 square feet of building space would not resolve the space problems. Plaintiff's congregation has grown beyond its current space. Although Plaintiff intends for the church and the school to share the use of the buildings, a total of 25,000 square feet will not accommodate Plaintiff's need for classrooms, a gymnasium, a sanctuary, day care rooms, offices and meeting rooms. Having the church and the school in two separate locations is also not feasible. Plaintiff's attempts to operate the church and the school in two separate locations in the past has been hampered by issues associated with transportation, cost and shared employees. There is also no guarantee that the school and church could build anywhere else in the Township.

*Living Water Church of God*, 384 F. Supp. 2d at 1133. The court went on to hold that:

> If Plaintiff reduces the size of the proposed building the building plans will have to

14

be redone and resubmitted. Although there may be larger lots of residential zoned land available in the Township, the Township no longer renews SUPs, so Plaintiff would have to resubmit an application for use of the property for a school. Because private schools are not a permitted use anywhere in the Township, there is no guarantee that Plaintiff will receive permission to build a school, regardless of size, at this location or anywhere else within the Township. Plaintiff is a small church with limited funds. The burden imposed by the denial of the SUP is not merely an inconvenience. *See Midrash Sephardi*, 366 F.3d at 1227. Plaintiff will incur delay, expense and uncertainty if it is required to reapply or search for another site. *See Sts. Constantine and Helen*, 396 F.3d at 901. Denial of the SUP is directly responsible for rendering Plaintiff's ability to use its real property for its religious purposes effectively impracticable. *See Civil Liberties*, 342 F.3d at 761. The Court concludes that the denial of the SUP to construct a building in excess of 25,000 square feet on Plaintiff's parcel imposes a substantial burden on religious exercise under RLUIPA.

*Id*. at 1134.

Living Water asserts that the Township's refusal to grant the additional square footage (1) effectively caused the church to shut down its daycare ministry because there was not enough room to juggle the logistics of operating both the daycare and other church ministries; (2) denied the church's religious school a permanent home, and the resulting uncertainty has limited the church's ability to recruit students to its school (thereby denying the school the opportunity to minister to students); (3) caused the church to lose members because there is insufficient space and seating to add new services and accommodate new members; (4) forced the church to cut back on activities, including a midweek worship service, adult education and outreach activities, and children's ministry; and (5) denied the church's staff onsite office space to run the church's ministries, including the school.

The question before us here is whether the Township's denial substantially burdens Living Water's religious exercise *now* — not five, ten or twenty years from now — based on the facts in the record. The Township's denial does not preclude the church from moving its school to the church property; it does not require the church to forgo providing religious education; it does not

15

preclude the church from enrolling students in its school; it does not prevent church members from entering the property and conducting worship or prayer services; it does not preclude the church from running religious programs and meetings in the evenings and on weekends; it does not preclude the church from accepting new members into its congregation. Moreover, the Township's decision does not prevent the church from building a 14,075 square-foot facility to house the school (taking it up to the 25,000 square-foot ceiling). *Cf. Mintz v. Roman Catholic Bishop*, 424 F. Supp. 2d 309, 321 (D. Mass. 2006) ("[A]s applied here, the bylaw would preclude *any additional construction* on property owned by a religious institution.") (emphasis added).

Living Water argued before the district court that it "is being coerced into violating its beliefs and abandoning its religious practices because it must choose between two or more of its ministries." In particular, Living Water asserted that it must have an onsite gymnasium both for the school and for other church activities. Living Water's pastor testified that the additional 14,000 square feet which the church can construct without exceeding the 25,000 square-foot limitation of the zoning ordinance is simply not enough space to accommodate a gymnasium and classrooms, let alone showering facilities, changing rooms, and offices. We recognize that the Township's decision burdens Living Water in several ways. First, Living Water cannot build out to the 34,989 square feet that it sought in its proposal. Second, if Living Water seeks to change any of the conditions tied to the Township's approval of the SUP to construct a religious school on its grounds, Living Water must submit another SUP. Finally, although Living Water would not need to go back to the Township Board to construct a school that complies with the 2003 SUP, Living Water would have to expend money and time to draw up new plans for a 14,075 square-foot facility.

On the other hand, so long as the square footage of the school does not bring the combined buildings' square footage above the 25,000 square feet permitted by the Township zoning ordinance,

16

and so long as Living Water complies with the 2003 SUP, Living Water may construct its school without additional Township action. The fact that Living Water's current facility is too small does not give the church free reign to construct on its lot a building of whatever size it chooses, regardless of limitations imposed by the zoning ordinances. And while we understand the church's reason for wanting a gymnasium — and we concede that it would be more convenient to have that facility onsite — we are hard-pressed to conclude that Living Water will be unable to carry out its church missions and ministries without it, nor do we believe that mere inconvenience equates to a substantial burden. *See Midrash Sephardi*, 366 F.3d at 1227 ("[A] 'substantial burden' must place more than an inconvenience on religious exercise.").

Even if Living Water's current needs are not the proper measuring stick, we do not find a substantial burden. Living Water has a building in which to worship. It may conduct its ministries and programs. It has permission to construct a school on its property, and it can build an additional 14,000 square-foot building without obtaining an SUP. While Living Water has outgrown its current facility, the record does not contain the kind of facts that would permit a finding that the building which the church can construct without an additional SUP would be so inadequate as to substantially burden Living Water's religious exercise in the future. RLUIPA does not protect the church from all land use regulation, but only from those regulations that substantially burden its religious exercise.

We return to the issue as we framed it earlier in this analysis: although the government action may make Living Water's religious exercise more expensive or difficult, does that government action place substantial pressure on Living Water to violate its religious beliefs or effectively bar the church from using its property in the exercise of its religion? We conclude that the Township's denial does neither. Ideally, no doubt, Living Water would have an unlimited and

ever-expanding place of worship with open doors to all who are interested — the same would surely apply to its school. The Township's action here, and the zoning ordinance in general, burdens this hope and objective. And although the Township's action may make Living Water's religious exercise more expensive or difficult, we cannot say that it places substantial pressure on this religious institution to violate its religious beliefs or that it effectively bars the institution from using its property in the exercise of its religion.

The district court also concluded that, even if the actual denial of the SUP for a building of the total size requested by Living Water did not, in itself, constitute a substantial burden on the church's religious exercise, the court could not view the 2003 SUP proposal in a vacuum; instead, the court concluded that it must consider the course of dealings, as it were, between the Township and Living Water. Specifically, the district court stated:

> The Township would like this Court to view the 2003 SUP application in isolation. If this Court were to do so, this Court might conceivably agree with the Township that the denial of an SUP for a certain sized building on a specific lot would not qualify as a substantial burden on religious exercise. However, the Court cannot view the 2003 SUP application in isolation. Plaintiff has had a long history with the Township. The 2003 SUP application must be viewed in the context of this history. The Township was aware of Plaintiff's plans to expand since Plaintiff made its first application for an SUP in 1995. The Township granted Plaintiff's application for construction of a 28,500 square foot addition in 2000, and then, after inviting Plaintiff to apply for an extension of the SUP, and on the eve of the expiration of the SUP, suddenly abandoned its long practice of allowing extensions of SUPs. Plaintiff worked diligently and in good faith with the Township to address its concerns before submitting a revised 2003 proposal. Plaintiff also expended significant energy and funds in creating the 2003 proposal. The 2003 proposal went farther than the previously approved 2000 plan in addressing the Township's concerns about enrollment, and its footprint was smaller than the 2000 plan. The Township then denied the 2003 proposal on arbitrary grounds that were not contained in the ordinance.

*Living Water Church of God*, 384 F. Supp. 2d at 1134.

We do not quarrel with the district court's considering context, but we think that this context

18

must include the course of dealings in its entirety — not simply from Living Water's point of view. First, while the Township — shortly before Living Water's 2000 SUP expired — did abandon its prior practice of granting SUP extensions, there is no evidence that the Township did so because of some animus directed towards Living Water specifically or religious institutions generally. The record reflects that the Township's new legal counsel had issued an opinion explaining that SUPs could not be extended, and that, contemporaneously with the denial of an extension of Living Water's expiring SUP, the Township had denied an extension of another entity's SUP. Moreover, Mark Kieselbach, the Township's Director of Community Planning and Development, testified before the district court that the Township has continued consistently to follow that practice.

Second, while we certainly recognize Living Water's cooperative efforts to work with the Township to address concerns regarding enrollment, hours, and logistics of the school, and we acknowledge that the Township knew Living Water wanted to expand its facilities in several phases, we are not persuaded of the relevance of those facts here. It would be anomalous at best to conclude that because the Township approved Living Water's first SUP, knowing that the church hoped to expand that facility, the Township was required to approve subsequent SUP proposals, regardless of their scope. Living Water did seek to build well beyond the 25,000 square-foot maximum, and in fact, in 2000 obtained an SUP for a building larger than 25,000 square feet. The proposal submitted in 2003, however, was significantly larger than that approved in 2000. Though the 2003 footprint of the building is actually smaller than the 2000 proposal, the ordinance pertains to overall square footage, not the building's footprint. Indeed, Kieselbach testified that the zoning ordinance considers gross square feet, not the perimeter size of the building(s) in question.

Finally, that the Township, in denying the proposal, considered matters not contained in the ordinance does not establish that the Township's denial of the SUP substantially burdened the

19

church's religious exercise. Even if the Township's consideration of the land-to-building ratios could be said to be arbitrary, it is the church's burden under RLUIPA to demonstrate that "the government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." 42 U.S.C. § 2000cc-2(b). Where the church has not demonstrated that the Township's denial of the SUP imposes a substantial burden on the church's religious exercise, we cannot conclude that by considering this information in reaching the decision to deny the SUP, the Township has imposed such a burden.

### III. CONCLUSION

Our decision today will certainly result in additional expense and delay for Living Water, and it means that — at least on its current site — Living Water cannot construct its ideal building. But while we might well prefer to reach the result reached by the district court, we cannot conclude that RLUIPA guarantees Living Water the 34,989 square-foot facility it sought in 2003. The right RLUIPA protects is the right not to have land use regulations implemented in a manner that imposes a *substantial* burden on an institution's religious exercise. It bears repeating that while the statute does not define that term, the legislative history directs us to the Supreme Court's "Free Exercise" jurisprudence to determine the term's scope.[6] The action of the Township in this case will require Living Water to incur increased expense to accomplish its goal of building a significantly larger church and school, and to endure increased inconvenience if it is not able to build a facility of the desired size. But nothing the Township has done requires Living Water to violate or modify or forego its religious beliefs or precepts, or to choose between those beliefs and a benefit to which the

---

[6]We are reluctant to interpret the "substantial burden" of this provision of RLUIPA as including lesser burdens than those encompassed by the Supreme Court's "Free Exercise" jurisprudence, inasmuch as the statute would then effectively exempt religious institutions from a great many land use regulations to which non-religious institutions are subject, arguably rendering the provision vulnerable to attack under the Court's "Establishment Clause" jurisprudence.

church is entitled. *See, e.g., Thomas*, 450 U.S. at 717-18; *Sherbert*, 374 U.S. at 404.

While we do not hesitate to say that the Township's denial of the SUP burdens Living Water to some degree, we cannot conclude that the denial imposes a substantial burden on the church's religious exercise. And while the size of Living Water's current facility and its ability to build out 14,075 square feet without Township interference is certainly a consideration in our analysis, it does not drive our decision today. We find no substantial burden because Living Water has failed to demonstrate that, without the SUP that the Township has refused to approve, it cannot carry out its church missions and ministries. Instead, Living Water has demonstrated only that it cannot operate its church on the *scale* it desires.

Our decision today is, as it must be, grounded in the facts before us. If the facts were different, i.e., if Living Water proffered evidence showing that it cannot carry out its church missions and ministries due to the Township's denial, we might have a different outcome. *See*, *e.g.*, *Westchester Day Sch. v. Vill. of Mamaroneck*, — F.3d —, 2007 U.S. App. LEXIS 24267 (2d Cir. 2007) (finding that the zoning board's absolute denial of a Jewish day school's special construction application violated RLUIPA where the "existing facilities are deficient," the school's "effectiveness in providing the education Orthodox Judaism mandates has been significantly hindered as a consequence" of the board's actions, the school had no "ready alternative" to the plan for which the zoning board denied a construction application, and the "school's enrollment has declined since 2001."). But we cannot and will not speculate as to what may happen in the future. The facts before us do not support a conclusion that the Township's denial of Living Water's SUP application substantially burdens its religious exercise.

Because we find no substantial burden, we do not reach the district court's conclusions with regard to whether the Township's action was in furtherance of a compelling governmental interest

21

or was the least restrictive means of furthering that interest.

Accordingly, we **REVERSE** the judgment of the district court, and **REMAND** this matter to the district court for further proceedings not inconsistent with this opinion.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** I concur in the judgment of the majority opinion and write separately because I disagree with some of the analysis therein. The majority opinion surveys the multiple ways in which the circuits have defined "substantial burden" for the purposes of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc(a)(1). Although the majority opinion does not purport to commit to any one particular definition, the opinion does suggest a specific formulation of the substantial-burden standard by posing the question: "although the government action may make [a religious institution's] religious exercise more expensive or difficult, does that government action place substantial pressure on [the religious institution] to violate its religious beliefs or effectively bar the church from using its property in the exercise of its religion?" Majority Op. at 18. No other circuit has advanced this precise standard, and I think this formulation is inadvisable. The latter part of this formulation, concerning a hypothetical bar on the use of a religious institution's property, is so broad as to swallow the substantial-burden inquiry. Were a religious institution to bring an RLUIPA claim in the case that a land-use regulation bars the use of its property, the question we must then decide is whether that bar constitutes a substantial burden.

I would adopt the substantial-burden standard established by the Seventh Circuit in *Civil Liberties for Urban Believers (CLUB) v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003). The Seventh Circuit held that "a land-use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise—including the use of real property for the purpose thereof within the regulated jurisdiction generally—effectively impracticable." *Id.* at 761. As the majority opinion explains, the Seventh Circuit initially backed away from the high threshold *CLUB* set for plaintiffs to prove substantial burden, but has recently returned to this standard. *See Vision Church v. Vill. of Long*

23

*Grove*, 468 F.3d 975, 999-1000 (7th Cir. 2006). Several other circuits have adopted the *CLUB* standard. *See San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir. 2004) (finding that "[a]s in the *[CLUB]* case, the City's regulations in this case do not render religious exercise effectively impracticable"); *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 661 (10th Cir. 2006) (citing *CLUB*, 342 F.3d at 760-61, for authority regarding the definition of "substantial burden" under RLUIPA); *see also The Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 100 F. App'x 70, 77 (3d Cir. 2004) (unpublished opinion) (same).

Applying the substantial-burden analysis I have outlined above, I concur in the majority's judgment that the township did not violate RLUIPA.