RENDERED: DECEMBER 1, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0867-MR

JOEL FREDERIC AND ELIZABETH                                        APPELLANTS
FREDERIC

 

                    APPEAL FROM KENTON CIRCUIT COURT
v.                  HONORABLE PATRICIA M. SUMME, JUDGE
                    ACTION NO. 21-CI-00766

 

CITY OF PARK HILLS BOARD OF
ADJUSTMENT; CATHLEEN
MATCHINGA; CHARLES MEYERS;
JUSTIN ODOR; MARK KOENIG;
MISSIONARIES OF SAINT JOHN
THE BAPTIST, INC.; ROBERT
SWEET; SHEILA BURKE TRUST;
SHEILA BURKE, IN HER CAPACITY
AS TRUSTEE FOR THE SHEILA
BURKE TRUST; AND THOMAS
MICHAEL                                                             APPELLEES

OPINION
REVERSING

** ** ** ** **

BEFORE: ACREE, DIXON,[1] AND TAYLOR, JUDGES.

ACREE, JUDGE: Appellants, Joel and Elizabeth Frederic, appeal the Kenton Circuit Court's June 29, 2022 Order affirming the decision of the City of Park Hills Board of Adjustment (Board) granting both a conditional use permit and a setback variance to enable Appellee, Missionaries of Saint John the Baptist, Inc. (Saint John), to construct a grotto behind the Our Lady of Lourdes church. Appellants argue the conditional use permit and setback variance are impermissible under the city's zoning ordinance. We agree, and reverse.

## **BACKGROUND**

Saint John owns property on Amsterdam Road in the City of Park Hills, Kentucky and there operates Our Lady of Lourdes, a Catholic church. Appellants own a residence on Park Drive in the City of Park Hills, and one side of their property is across the street from Saint John's property. Appellees Sheila Burke and the Sheila Burke Trust owned land adjacent to the church.

On March 18, 2021, Appellees Jordan Odor, acting on behalf of Saint John, and the Sheila Burke Trust applied to Kenton County Planning and Development Services for a conditional use permit for the construction of a grotto behind the church. In their briefs, Appellants describe the proposed grotto as

---

[1] Judge Donna Dixon concurred in the Opinion prior to her retirement effective November 20, 2023. Release of this Opinion was delayed by administrative handling.

"large"; Appellees describe it as "small." The grotto would include a shrine, plaza, walking path, and retaining wall. The church also requested a variance for its rear and side yard setbacks.

The City of Park Hills Board of Adjustment held a public hearing on the application on April 15, 2021. The Board approved both the conditional use permit and the setback variances on the condition that a portion of the land owned by Appellees Sheila Burke and the Sheila Burke Trust be deeded to the church. Burke and the Burke Trust deeded the land to Saint John on June 22, 2021.

Appellants appealed the Board's decision to the circuit court pursuant to KRS[2] 100.347. The circuit court affirmed, concluding Appellants "have not met their burden of persuading this court that the [Board] acted arbitrarily or in any way outside of its regulatory authority." Appellants appealed the circuit court's decision, which is now before us for our review.

## STANDARD OF REVIEW

"[J]udicial review of administrative action is concerned with the question of *arbitrariness*." *Am. Beauty Homes Corp. v. Louisville & Jefferson Cnty. Plan. & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964) (emphasis original). An administrative agency's decision is arbitrary if the agency acted in excess of its statutory power, if a party affected by an administrative action was not

---

[2] Kentucky Revised Statutes.

-3-

afforded procedural due process, or if the administrative decision was not supported by substantial evidence. *Id*. (citations omitted). "Substantial evidence has been conclusively defined by Kentucky courts as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Nat. Res. & Env't Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994) (citing *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972)).

## **ANALYSIS**

First, we must determine whether the Board acted in excess of its statutory authority in granting the requested conditional use and variances. We conclude that it did.

Appellants argue that, because boards of adjustment are prohibited by statute from both granting variances which contradict zoning regulations and from enlarging or extending a previously existing nonconforming use, the Board exceeded its statutory authority in granting Appellees' requests.

As Appellees note, KRS 100.237 authorizes the board to "approve, modify, or deny any application for a conditional use permit." KRS 100.237(1). However, this power is not without limitation. Variances are not permitted where such variance would violate applicable zoning regulations. KRS 100.247 prohibits the board from exercising "power to grant a variance to permit a use of any land,

-4-

building, or structure which is not permitted by the zoning regulation in the zone in question, or to alter density requirements in the zone in question." KRS 100.247. This means "one cannot obtain a variance for the use if the property is not permitted by the zoning regulation or alters the density requirements." *Louisville & Jefferson Cnty. Plan. Comm'n v. Schmidt*, 83 S.W.3d 449, 451 (Ky. 2001) (citing KRS 100.247).

Additionally, while nonconforming uses which predate applicable zoning regulations may continue once the regulations are adopted, a board of adjustment may not enlarge or expand that nonconforming use. KRS 100.253 is determinative of the issue and says:

> (1) The lawful use of a building or premises, existing at the time of the adoption of any zoning regulations affecting it, may be continued, although such use does not conform to the provisions of such regulations, except as otherwise provided herein.
>
> (2) The board of adjustment shall not allow the enlargement or extension of a nonconforming use beyond the scope and area of its operation at the time the regulation which makes its use nonconforming was adopted, nor shall the board permit a change from one (1) nonconforming use to another unless the new nonconforming use is in the same or a more restrictive classification, provided, however, the board of adjustment may grant approval, effective to maintain nonconforming-use status, for enlargements or extensions, made or to be made, of the facilities of a nonconforming use, where the use consists of the presenting of a major public attraction or attractions, such as a sports event or events, which has been presented at the same site over such period of years

and has such attributes and public acceptance as to have attained international prestige and to have achieved the status of a public tradition, contributing substantially to the economy of the community and state, of which prestige and status the site is an essential element, and where the enlargement or extension was or is designed to maintain the prestige and status by meeting the increasing demands of participants and patrons.

KRS 100.253(1)-(2).

The church is located in an R-1EE zone, which is governed by Section 10.4 of the Park Hills Zoning Ordinance. Section 10.4 says:

A. PERMITTED USES:

1. Single-family residential dwellings (detached).

2. Two-family residential dwellings.

3. Planned Unit Development (PUD), as regulated by ARTICLE XI of this Ordinance.

B. ACCESSORY USES:

1. Customary accessory buildings and uses.

2. Fences and walls, as regulated by ARTICLE XVI of this Ordinance.

3. Home occupations, subject to the restrictions and limitations established in SECTION 9.23 of this Ordinance.

4. Signs, as regulated by ARTICLE XV of this Ordinance.

C. CONDITIONAL USES: No building or occupancy permit shall be issued for any of the following, nor shall any of the following uses or any customary accessory buildings or uses be permitted until and unless the location of said use shall have been applied for and approved of by the Board of Adjustment, as set forth in SECTION 9.13:

. . . .

2. Churches and other buildings for the purpose of religious worship, provided they are located adjacent to an arterial street.

Park Hills, Ky., Zoning Ordinance § 10.4(A)-(C).

Section 19 of the Zoning Ordinance governs the Board, and Section 19.6 provides the Board's powers with respect to dimensional variances and nonconforming uses. Section 19.6, Subsection B provides:

B. DIMENSIONAL VARIANCE CANNOT CONTRADICT ZONING REGULATIONS: The Board of Adjustment shall not possess the power to grant a dimensional variance to permit a use of any land, building, or structure which is not permitted by this Ordinance in the zone in question, or to alter the density requirements in the zone in question.

Park Hills, Ky., Zoning Ordinance § 19.6(B). Further, Subsection D provides:

D. CHANGE FROM ONE NONCONFORMING USE TO ANOTHER: No change from one nonconforming use to another will be granted by the Board of Adjustment, unless and until:

1. The Board of Adjustment shall find that the new nonconforming use is in the same or more restrictive classification of use as the prior

nonconforming use. In the determination of the same or more restrictive classification of use, the applicant shall establish and the Board of Adjustment shall find:

a. That the new nonconforming use shall generate less vehicular traffic (automobile and truck) than the prior nonconforming use;

b. That the new nonconforming use is of a nature which will emit less noise and air pollution than the prior nonconforming use;

c. That the new nonconforming use will be more in character with the existing neighborhood than the prior nonconforming use, in that it is more in conformance with the area – wide comprehensive plan as adopted by the Kenton County and Municipal Planning and Zoning Commission, and also, more in conformance with the uses permitted in the zone in which the use is located, than the prior nonconforming use.

. . . .

3. The Board of Adjustment shall not allow the enlargement or extension of a nonconforming use beyond the scope and area of its operation at which time its use became nonconforming.

Park Hills, Ky., Zoning Ordinance § 19.6(D)(1), (3).

The Zoning Ordinance defines an "arterial street" as "[p]ublic thoroughfares which serve the major movements of traffic within and through the community, as identified in the adopted comprehensive plan for the city of Park Hills." Park Hills, Ky., Zoning Ordinance § 7.

As relevant to this appeal, the Zoning Ordinance also defines "collector streets" as "[p]ublic thoroughfares which serve to collect and distribute traffic, primarily from local residential streets to arterial streets." *Id*. It also defines "local streets" as "[f]acilities which are designed to be used primarily for direct access to abutting properties and leading into the collector street system." *Id*.

According to a report zoning staff provided to the Board, Amsterdam Road is a collector street. Therefore, the church is not located on an arterial street as the Zoning Ordinance requires. Because the church came into existence prior to implementation of the Zoning Ordinance, it constitutes a preexisting nonconforming use.[3]

We agree with Appellants that the Board failed to follow Park Hills' zoning ordinances and, therefore, acted outside the bounds of its statutory authority. First, Appellant is correct that construction of the grotto in the rear of the church property would constitute either a change or an expansion of the church's preexisting nonconforming use. If construction of the grotto constitutes a change in the nonconforming use, under Section 19.6(D)(1) of the Zoning

---

[3] Appellees argue in their brief that, because the church is a preexisting nonconforming use, Park Hills' Zoning Ordinance is not violated because the church is not located next to an arterial street. However, Appellant does not contest the church's status as such or argue that the nonconforming use must be discontinued. The continued operation of the church is not a subject of this appeal.

Ordinance, the Board was required to find that the new nonconforming use – in this case, the grotto – would generate less vehicular traffic, create less noise and air pollution, and be more in line with the character of the neighborhood than the previous nonconforming use.

Expansion of preexisting nonconforming uses is plainly prohibited by Section 19.6(D)(3) of the Zoning Ordinance, which says, "[t]he Board of Adjustment shall not allow the enlargement or extension of a nonconforming use beyond the scope and area of its operation at which time its use became nonconforming." Construction of a grotto – large or small – in the rear of the church property, for both the church membership and the public to use, constitutes an expansion of both the scope and area of the nonconforming use. KRS 100.253(2) prohibits the church from doing so.

Additionally, a majority portion of the planned grotto is to be constructed on the former Sheila Burke Trust property. This land was residential property prior to the church acquiring it. This land was not used previously for the preexisting nonconforming use of a church. And the fact that acquisition of this land was necessary to construct the grotto further illustrates the grotto would constitute an enlargement of the church's preexisting nonconforming use in terms of both scope and area, which KRS 100.253(2) prohibits.

Appellees offer *Board of Adjustments, Bourbon County v. Brown*, 969 S.W.2d 214 (Ky. App. 1998), to support the notion that minor or modest expansions of preexisting nonconforming uses have been upheld by reviewing courts. In *Brown*, we determined the enclosure of a porch to construct restroom facilities for auction house patrons, as well as an increase of weekly auctions from two to three, did not constitute an impermissible enlargement of a nonconforming use. *Id*. at 217. However, the auction house proprietors in *Brown* also sought to construct a parking lot on nearby land, which the Bourbon County Board of Adjustments determined was not a permissible use under the county's zoning ordinance; the Board's determination as to the parking lot was affirmed by the circuit court, but not challenged on subsequent appeal. *Id*. at 215.

However, the construction of the grotto is unlike the expansions of preexisting nonconforming uses in *Brown*. In that case, the square footage of the auction house's operations was not increased, *id*. at 217, while the construction of the grotto will require such increase. The grotto – which would largely be constructed on adjacent land which was never used for a nonconforming purpose – is more akin to the parking lot in *Brown* than the construction of restrooms or the increased weekly auctions. We do not agree with Appellees that construction of the grotto would constitute the same sort of minor or modest expansion as was present in *Brown*.

Appellees also cite to *A. L. Carrithers & Son v. City of Louisville*, 63 S.W.2d 493 (Ky. 1933), again for the proposition that minor expansions of preexisting nonconforming uses can be permissible. However, circumstances in that case are distinct from the current case. In *A. L. Carrithers & Son*, the appellant, a corporation, had operated a milk business since 1909, and in 1931 a health inspection required the business to either cease manufacturing butter or to enlarge its plant in order to relocate a component of the operation into the enlarged space. *Id.* at 494-95. This expansion violated a section of Louisville's zoning code prohibiting structural alterations to buildings constituting preexisting nonconforming uses, and so the board of adjustments denied the appellant's application. *Id.* As the then-highest Kentucky court concluded, extending the building's walls for relocation of parts of the butter production process was not "a change of such a nature as materially affects the realty itself, or its use, or the health, morals, or general welfare of the zoned district." *Id.* at 497 (citations omitted). And because the zoning code did permit such structural alterations when required by law or ordinance, and the milk business was required to expand its building following an inspection, the expansion of the building's walls was a permissible enlargement of a preexisting nonconforming use. *Id.*

We believe the grotto to be unlike the expansion of the plant in *A. L. Carrithers* for several reasons. First, the church was under no requirement

-12-

pursuant to law or ordinance to construct the grotto in the same way the milk plant in *A. L. Carrithers* was required to expand following a government inspection. *Id.* at 494. Further, unlike the building expansion in *A. L. Carrithers*, construction of the grotto would fundamentally affect the realty and its use. Though the square footage of the preexisting nonconforming use in *A. L. Carrithers* did increase, the construction of the grotto is too dissimilar for *A. L. Carrithers* to provide an applicable rule.

Appellants also argue the Board's decision was arbitrary because they were denied due process during the administrative action. Specifically, they argue they were denied due process because they were not permitted to cross-examine Odor, the church's representative. "When making a zoning decision, the legislative body must provide a party whose constitutional interest is at stake 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Huxol v. Daviess Cnty. Fiscal Ct.*, 507 S.W.3d 574, 580 (Ky. App. 2016) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976)). Ordinarily, all that is required is that the legislative body conduct a hearing, take and weigh evidence, consider the evidence, create findings of fact, enter an order supported by substantial evidence, and respect subsequent judicial review of its decision. *Id.* (citing *Hilltop Basic Res., Inc. v. Cnty. of Boone*, 180 S.W.3d 464, 468 (Ky. 2005)). "However, in zoning cases where a decision is

made following a trial-type adjudicatory hearing, the parties also have the additional right to cross-examine witnesses." *Id.* (citing *Kaelin v. City of Louisville*, 643 S.W.2d 590, 591-92 (Ky. 1982)).

As Appellees note, Appellant Joel Frederic was present at the hearing and commented on the application. Though Frederic did not attempt to ask questions of Odor himself, other hearing attendees did. The Board never barred anyone from asking questions, and each attendee was given the opportunity to question testimony. In our view, Appellants are unable to demonstrate that they were denied the opportunity to cross examine Odor.

Appellants additionally argue the Board's decision was arbitrary because it was not supported by substantial evidence. As the circuit court determined, the administrative record demonstrates substantial evidence supported the Board's decision, including findings that the grotto "will comply with any regulations and conditions specified in the applicable ordinances and will not allow an unreasonable circumvention of the zoning regulations." However, as discussed above, the Board acted beyond the bounds of its statutory authority in granting the church's application. Therefore, we do not need to examine whether the evidence relied upon by the Board in making its decision was substantial.

Finally, Appellees argue the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C.[4] § 2000cc *et seq.*, prohibits the Board from preventing the construction of the grotto. We note that the circuit court made no reference to RLUIPA in its Order.

> As a "general rule," the statute provides:
>
> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that the imposition of the burden on that person, assembly, or institution –
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc(a)(1). However, as the Sixth Circuit notes, there is "no substantial burden when, although the action encumber[s] the practice of religion, it d[oes] not pressure the individual to violate his or her religious beliefs." *Living Water Church of God v. Charter Tp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007) (citing *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449, 108 S. Ct. 1319, 99 L. Ed. 2d 534 (1988)).

---

[4] United States Code.

"RLUIPA's history demonstrates that Congress intended to leave intact the traditional 'substantial burden' test, as defined by the Supreme Court's free exercise jurisprudence." *Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 701 (E.D. Mich. 2004) (citations omitted). Federal courts have identified two categories of alleged substantial burden upon free exercise of religion. *Id*. at 701. As to the first, "courts routinely find substantial burdens where compliance with the statute itself violates the individual's religious beliefs and noncompliance may subject him to criminal sanctions or the loss of a significant government privilege or benefit." *Id*. at 701-02 (citing *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972)). In the second, "courts have been far more reluctant to find a violation where compliance with the challenged regulation makes the practice of one's religion more difficult or expensive, but the regulation is not inherently inconsistent with the litigant's beliefs." *Id*. at 702 (citing *Braunfeld v. Brown*, 366 U.S. 599, 81 S. Ct. 1144, 6 L. Ed. 2d 563 (1961)).

The Park Hills Zoning Ordinance falls squarely within the second category. The application of the ordinance to prohibit construction of the grotto may make practice of religion somewhat more difficult for the church's congregation or the adherents of the Catholic faith broadly, but the Zoning Ordinance is not inherently inconsistent with their religious beliefs. Accordingly,

-16-

we find the Park Hills Zoning Ordinance imposes no substantial burden on the religious exercise of any Appellee and, therefore, the ordinance does not constitute a violation of RLUIPA.

## **CONCLUSION**

For the foregoing reasons, we reverse the Kenton Circuit Court's June 29, 2022 Order affirming the decision of the City of Park Hills Board of Adjustment.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Christopher Wiest
Crestview Hills, Kentucky

BRIEF FOR APPELLEES:

Daniel R. Braun
Covington, Kentucky