RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

CATHOLIC HEALTHCARE INTERNATIONAL, INC.; JERE PALAZZOLO,

*Plaintiffs-Appellants/Cross-Appellees,*

*v.*

GENOA CHARTER TOWNSHIP, MICHIGAN; SHARON STONE, in her official capacity as Ordinance Officer, Genoa Charter Township,

*Defendants-Appellees/Cross-Appellants.*

Nos. 22-2139/23-1060

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:21-cv-11303—Shalina D. Kumar, District Judge.

Argued:  July 19, 2023

Decided and Filed:  September 11, 2023

Before:  CLAY, KETHLEDGE, and LARSEN, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Robert Joseph Muise, AMERICAN FREEDOM LAW CENTER, Ann Arbor, Michigan, for Appellants/Cross-Appellees.  David D. Burress, SEWARD HENDERSON PLLC, Royal Oak, Michigan, for Appellees/Cross-Appellants.  **ON BRIEF:**  Robert Joseph Muise, Kate Oliveri, AMERICAN FREEDOM LAW CENTER, Ann Arbor, Michigan, for Appellants/Cross-Appellees.  David D. Burress, T. Joseph Seward, SEWARD HENDERSON PLLC, Royal Oak, Michigan, for Appellees/Cross-Appellants.

KETHLEDGE, J., delivered the opinion of the court in which CLAY and LARSEN, JJ., joined.  CLAY, J. (pp. 13–19), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

KETHLEDGE, Circuit Judge.    Fillmore County Park in Genoa Charter Township, Michigan, includes a fifteen-station "Leopold the Lion Reading Trail"—with a series of large signs that, as one walks along the path, tell "the entire story" of Leopold.  Meanwhile, on a wooded 40-acre property a few miles away, Catholic Healthcare, Inc. created a prayer trail with fourteen "Stations of the Cross"—depicting the story of Christ's last day.  That trail the Township chose to treat as the zoning equivalent of a church building—for which, the Township insisted, Catholic Healthcare must apply for a "special land use" permit.  At considerable expense, Catholic Healthcare has submitted two such applications—both of which the Township denied.  The Township also forced Catholic Healthcare to remove all the Stations of the Cross, along with a stone altar and mural, from its prayer trail.

In this appeal, Catholic Healthcare seeks a preliminary injunction allowing it to restore the Stations of the Cross, altar, and mural to its prayer trail—relief for which it moved in the district court some two years ago.  The district court has twice denied that request, most recently holding that—notwithstanding all the events described above—Catholic Healthcare's free-exercise and statutory claims are unripe.  We reverse that holding and grant Catholic Healthcare's request for an injunction.  We also reject the Township's cross-appeal.

I.

A.

Catholic Healthcare, Inc. (sometimes referred to here as "plaintiffs") is a religious organization whose mission is to further the work of Saint Padre Pio—the patron saint of healing.  In 2020, the Roman Catholic Diocese of Lansing agreed to convey to Catholic Healthcare 40 acres of undeveloped, wooded property in a rural area of Genoa Township.  In an email exchange that July, plaintiffs informed the Township of their plans to create a prayer trail with the Stations of the Cross and stone mural.  The Township's Community Development

Director, Kelly VanMarter, responded that the Township would treat the prayer trail as a church—which "would require special land use and site plan approval pursuant to the Genoa Township Zoning Ordinance." To seek that approval, VanMarter wrote, Catholic Healthcare would need to submit the following items, among others:

1.) Completed Special Land Use Application.

2.) Completed Site Plan Review Application.

3.) $2,875.00 Special Land Use/Site Application Fee made payable to Genoa Charter Township. This *must* be paid at time of submission.

4.) Four (4) Sets of Site Plans (folded) that comply with the applicable requirements found in the Site Plan Review Application. The site plan *must* be sealed by an architect or engineer registered in the State of Michigan.

5.) Four (4) copies of an Environmental Impact Assessment (see site plan application for requirements).

The President of Catholic Healthcare, Jere Palazzolo, thereafter traveled from St. Louis to meet with VanMarter, and afterward emailed her that he was "very surprised of the complexity of the application/review/approval process you said we must undertake at this time." He added that "[c]hurches, temples and places of worship are obviously buildings" and that "we are by no means talking about a 'place of worship' at this time." Palazzolo also asked, "please allow us to do the very minor things we are planning now which will not involve development of the property or building or paving." In a couple of terse emails over the next two weeks, however, VanMarter made clear that the Township would not change its position regarding the need for a special land-use permit.

Plaintiffs thereafter proceeded to create the prayer trail anyway, with the Stations of the Cross, the mural, and a stone altar (the "religious displays"). None of the religious displays were visible from outside plaintiffs' 40-acre parcel. In October, the Township demanded that plaintiffs remove the religious displays from their prayer trail. Plaintiffs did not comply with that demand. Instead—given the Township's insistence on treating the prayer trail as a church—plaintiffs decided to expedite their longer-term plan to seek approval for an actual church building.

In December 2020, plaintiffs submitted a special land-use application for permission to build a 6,000-square-foot chapel, a driveway, and a parking lot, along with the prayer trail. After a public hearing, on a divided vote, the Genoa Township Planning Commission recommended approval of the application, stating that Catholic Healthcare had gone "above and beyond and addressed all of the concerns of the Planning Commission and the consultants." But in May 2021—again on a divided vote—the Township Board denied the application, stating that the "proposed use involving a 95 seat, 6,090 square foot church with associated parking lot, site lighting, building lighting, and outdoor accessory structures" was "not consistent" with the Township's "Master Plan[.]" Two days later, the Township again demanded that plaintiffs remove the religious displays from their property. Plaintiffs again refused.

B.

The remainder of this case's factual and procedural history is convoluted. We discuss only the parts that matter for this appeal.

1.

Plaintiffs brought this lawsuit in June 2021, claiming that, as applied to them, the Township's zoning ordinance violated the federal Constitution, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Michigan Constitution. Plaintiffs requested declaratory and injunctive relief, among other things.

Local officials then took two actions affecting plaintiffs' use of their property. First, in July, the Livingston County Road Commission issued Catholic Healthcare a permit allowing plaintiffs to construct a "field driveway" but barring them from using it for "organized gatherings." That posed a problem for plaintiffs, given their plans to celebrate the Feast of St. Pio on September 23. Second, on September 17, 2021, the Township sued Catholic Healthcare in state court, alleging violations of its zoning ordinance. Apparently, the Township and state court alike regarded the presence of the religious displays on the prayer trail as an emergency: for that same day the Township sought, and three days later the state court entered—*ex parte*—a temporary restraining order requiring Catholic Healthcare to remove the displays and barring any

"organized gatherings" on its property. In the days that followed, plaintiffs and a group of volunteers physically removed all the religious displays from the prayer trail.

Around the same time, in federal court, plaintiffs moved for a preliminary injunction allowing them to retain (or later, restore) the religious displays on their trail. The district court eventually denied that motion, in part on abstention grounds; on appeal, we directed the district court to reconsider that holding. *Catholic Healthcare Int'l v. Genoa Charter Township*, No. 21-2987 (6th Cir. Nov. 12, 2021).

Meanwhile, in October 2021, plaintiffs submitted a second special land-use application—which this time did not seek permission to build a chapel. Rather, plaintiffs sought only to restore the religious displays to their prayer trail, and to improve the driveway and a parking area. Yet the Planning Commission concluded that the revised application presented no "new grounds" or "changed conditions" that would affect "the reasons" for the Township Board's denial of plaintiffs' application in May. The "reasons" for the earlier denial—as the Board described them in its minutes of that meeting—almost exclusively concerned the first application's "proposed use involving a 95 seat, 6,090 square foot church with associated parking lot." Yet the Township Board denied (or technically, refused to consider) plaintiffs' new application. Plaintiffs appealed that decision to the Township's Zoning Board of Appeals, which denied relief.

2.

In December 2022, the district court issued the opinions at issue here. The first opinion adjudicated a motion to dismiss, and dismissed as unripe plaintiffs' "claims arising from the prohibition and removal of Catholic Healthcare's religiously symbolic structures from the property." The second opinion denied in part and granted in part plaintiffs' motion for a preliminary injunction. Specifically, the court declined to enter an injunction allowing plaintiffs to restore their religious displays; but the court entered an injunction allowing plaintiffs to hold organized gatherings on their property. The parties then brought this interlocutory appeal and cross-appeal. *See* 28 U.S.C. § 1292(a).

II.

We review for an abuse of discretion a district court's decision whether to issue a preliminary injunction. *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017). In doing so, we review legal questions de novo. *Id.*

Courts consider four factors in deciding whether to grant a preliminary injunction: whether the movant is likely to succeed on the merits of its claim; whether the movant is likely to suffer irreparable harm absent an injunction; the balance of equities; and the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In RLUIPA cases—as in other cases involving free-exercise rights—the likelihood of success on the merits is often the dispositive factor. *See Doster v. Kendall*, 54 F.4th 398, 428 (6th Cir. 2022).

A.

We begin with plaintiffs' appeal, in which they seek a preliminary injunction allowing them to restore the Stations of the Cross, the altar, and the mural to their prayer trail. As shown below, we can adjudicate that appeal based solely on their claim under RLUIPA. "Under traditional principles of constitutional avoidance, then, we need not address" plaintiffs' First Amendment claims. *Doster*, 54 F.4th at 410.

1.

a.

As an initial matter—as to the first of the four factors of the preliminary-injunction test—the Township argues that we lack jurisdiction to review the district court's determination that plaintiffs are not likely to succeed on the merits of their RLUIPA claim. That argument is indeed the Township's principal argument in this appeal. The argument runs as follows: the relevant jurisdictional provision, 28 U.S.C. § 1292(a)(1), affords us interlocutory jurisdiction over district-court orders granting or denying injunctions; here, the district court held that plaintiffs were unlikely to succeed on their RLUIPA claim because, the court said, the claim was unripe; that decision came in the district court's order adjudicating the Township's motion to dismiss,

not its injunction order; and thus, the Township says, we cannot revisit the court's ripeness decision in this appeal.

The law says otherwise.  Under § 1292(a)(1) we have jurisdiction to decide any "predicate issue" that would prevent a district court from granting an injunction.  *Doster*, 54 F.4th at 429–30; *see also, e.g.*, *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 & n.2 (6th Cir. 2006).  Here—in the district court's order denying an injunction as to this claim—the court actually incorporated by reference its ripeness determination from its motion-to-dismiss order (which was issued the same day as the injunction order).  Hence that determination was obviously a predicate of the court's denial of the injunction.  We therefore have jurisdiction to review the district court's determination that the plaintiffs' claims are unripe.[1]

b.

The district court's ripeness determination, in turn, was plainly mistaken.  A claim is unripe when "it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).  In land-use cases, the necessary event is simply that the government has adopted a "definitive position" as to "how the regulations at issue apply to the particular land in question." *Pakdel v. City & County of San Fran.*, 141 S. Ct. 2226, 2230 (2021) (cleaned up).  That has manifestly happened here:  the Township has uniformly insisted that the plaintiffs obtain a special land-use permit for their religious displays; the Township Board has twice refused to grant them one, even when presented with an application limited almost entirely to those displays; and the Zoning Board of Appeals denied relief.  Moreover, those events have "inflicted an actual, concrete injury" on plaintiffs, *id.*, because the Township has actually forced them to remove the religious displays from their property.

---

[1]The Township also asserts that the Anti-Injunction Act bars our jurisdiction in this appeal.  That argument consists solely of a quote of the Act's text:  "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  But plaintiffs do not request any "injunction to stay proceedings in a State court"; and meanwhile the state court here has already stayed its own proceedings, in favor of allowing this case to proceed.

The district court's mistake was to conflate ripeness (sometimes called "finality" in this context) and exhaustion. Specifically, the court reasoned that "only if the local regulatory process was exhausted will a court know precisely how a regulation will be applied to a particular parcel or use." Op. at 16. That was the same mistake the Ninth Circuit made in *Pakdel*. Ripeness, in the land-use context, requires only a "relatively modest" showing that the "government is committed to a position" as to the strictures its zoning ordinance imposes on a plaintiff's proposed land use. 141 S. Ct. at 2230. Ripeness does not require a showing that "the plaintiff *also* complied with administrative process in obtaining that decision." *Id*. Yet that was the showing the district court demanded here.

The Township cites our decision in *Miles Christy Religious Order v. Township of Northville*, 629 F.3d 533 (6th Cir. 2010), but that case bears no similarity to this one. There, the plaintiffs brought suit before they even asked Northville Township to take anything like a formal position as to their proposed land use. *Id.* at 538. By contrast, this case comes to us after Genoa Township has taken a definitive position, again and again, to the plaintiffs' concrete injury. Their claim is ripe.

c.

That leaves the question whether plaintiffs are likely to succeed on the substantive merits of their RLUIPA claim. The statute provides in relevant part:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
>
> > (A) is in furtherance of a compelling governmental interest; and
> >
> > (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1).

The question here is whether the Township's decision to treat the prayer trail as the equivalent of a church building—thereby requiring plaintiffs to apply for a special land-use permit—imposed a substantial burden on their "religious exercise[.]" *Id*. For a burden to be

considered "substantial," it must have "some degree of severity" and be "more than an inconvenience." *Livingston Christian Schs. v. Genoa Charter Township*, 858 F.3d 996, 1003 (6th Cir. 2017). One factor in determining substantiality, for purposes of 42 U.S.C. § 2000cc(a)(1), is whether "the religious institution will suffer substantial delay, uncertainty, and expense due to the imposition of the regulation[.]" *Id.* at 1004 (cleaned up). Plaintiffs undisputedly have suffered all those things: after two years of administrative proceedings and considerable expense, they remain unable to place the religious displays on their prayer trail.

The only factor that the Township mentions, in arguing that plaintiffs have not borne a substantial burden, is whether "a plaintiff has imposed a burden upon itself[.]" *Id.* This factor reflects that, when a plaintiff has good reason to know in advance that its proposed usage will be subject to an onerous review process, the burdens of that process are not likely to count as substantial for purposes of 42 U.S.C. § 2000cc(a)(1). But here the Township's zoning ordinance gave plaintiffs little reason to expect the treatment they have received. The ordinance defines a "church or temple" as any "structure wherein persons regularly assemble for religious activity." Genoa Township Zoning Ordinance, § 25.02, p.25-9. The ordinance defines "structure," in turn, to mean "[a]nything constructed or erected, the use of which requires location on the ground or attachment to something on the ground"—such as "buildings, radio, television and cellular phone towers, decks, fences, privacy screens, walls, antennae, swimming pools, signs, gas or liquid storage facility, mobile homes, street directional or street name sign [*sic*] and billboards." *Id.* at p.25-29. By this definition, the religious displays are "structures": the Stations of the Cross are structurally akin to large birdhouses, and the altar and mural were indeed set on the ground. But a church is a structure "wherein" people gather to worship. And no person—much less "persons"—could gather to worship inside any of these structures. The ordinance's definition of "church" comports with the term's ordinary meaning. The ordinance therefore gave plaintiffs no reason to think the Township would treat their trail *cum* religious displays as a church.

To the contrary, plaintiffs had reason to think that their prayer trail would be treated in the same manner as "[p]rivate non-commercial parks, nature preserves and recreational areas"— none of which require a special land-use permit in the type of zoning district (called "Country Estate") in which plaintiffs' parcel is located. Ordinance § 3, p.3-4. Parks have visitors, even

organized gatherings—like festivals and baseball games, which scores of people might attend. And parks routinely have stations with structures attached to the ground—like workout stations or Leopold the Lion's trail. The Township's demand that the plaintiffs obtain a special land-use permit for the religious displays on their trail—with all the burdens described in VanMarter's email, and all the uncertainty inherent in discretionary land-use decisions—came as a shock to these plaintiffs precisely because nothing in the Township's ordinance would have prepared them for it.

The Township responds—in the last of its arguments that even attempts to address the merits of this RLUIPA claim—that VanMarter's emails should have put plaintiffs on notice that the Township would treat their religious displays as the zoning equivalent of a church building. But that reasoning makes little sense as applied to an ordinance interpretation as tendentious as the one at issue here. Zoning ordinances amount to a body of legal rules that prevent municipal officials from exercising their discretion in a manner that is wholly arbitrary. We would undermine that purpose and § 2000cc(a)(1) alike if we treated the burdens resulting from an official's diktat as self-imposed by the property owner.

Plaintiffs can therefore likely prove that the Township substantially burdened their religious exercise when it required them to obtain a special land-use permit to retain the religious displays on their prayer trail. The burden thus shifts to the Township to show that its insistence on such a permit is narrowly tailored to advance a compelling interest. 42 U.S.C. § 2000cc(a)(1)(A), (B); *Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022) (noting that, for RLUIPA claims, "[t]his allocation of burdens applies in the preliminary injunction context"). The Township makes no attempt to meet that burden. The plaintiffs are therefore likely to succeed on the merits of their RLUIPA claim as to the specific injunction they seek here.

The remaining preliminary-injunction factors also favor plaintiffs: the forced removal of their religious displays inflicts an ongoing harm to their religious exercise; the restoration of those displays would impose negligible harm on others; and the public interest favors vindications of rights protected under RLUIPA. *See Doster*, 54 F.4th at 428. The Township

does not argue otherwise. Plaintiffs are entitled to a preliminary injunction allowing them to restore the Stations of the Cross, altar, and mural to their prayer trail.

## B.

That leaves the Township's appeal of the district court's preliminary-injunction order—specifically, the part enjoining the Township from enforcing a "prohibition of organized gatherings[.]" Op. at 10. Again, to adjudicate this appeal, we need consider only plaintiffs' RLUIPA claim.

For two years, the Township enforced a condition on a now-expired driveway permit to bar Catholic Healthcare from hosting organized gatherings on its property. The Township did not identify in the district court, Op. at 9, and has not clearly identified here, any authority other than the expired driveway permit for a ban on organized gatherings on plaintiffs' property. More to the point, the ban on its face substantially impairs Catholic Healthcare's ability to use the property to further its religious mission. The Township's only argument to the contrary is that Catholic Healthcare could host organized gatherings at a church in Brighton, Michigan instead. But that church lacks a secluded prayer trail on a wooded, 40-acre parcel of land. On this record, therefore, plaintiffs can likely show that a ban on organized gatherings on their property would (and has) substantially burdened their religious exercise.

That means the ban is subject to strict scrutiny. The Township makes no meaningful argument on that point either. The Township says not a word, for example, about how a ban on organized gatherings would be "narrowly tailored" for purposes of strict scrutiny. Hence plaintiffs are likely to succeed on their RLUIPA claim with regard to this injunctive relief as well; and the remaining preliminary-injunction factors favor plaintiffs for essentially the reasons stated above. The district court therefore did not abuse its discretion by enjoining the Township from enforcing its ban on organized gatherings on plaintiffs' property.

\*          \*          \*

We reverse the district court's preliminary-injunction order in part, and remand for the prompt entry of a preliminary injunction allowing plaintiffs to restore the Stations of the Cross, the stone altar, and the stone mural to their prayer trail. The court must ensure that plaintiffs are able to restore those structures before September 23, 2023. We affirm the district court's preliminary-injunction order to the extent it enjoined the Township from enforcing any prohibition of "organized gatherings" on the property.

_____

**CONCURRENCE**

_____

CLAY, Circuit Judge, concurring.  Plaintiffs Catholic Healthcare International, Inc. and its president Jere Palazzolo filed this suit against Defendants Genoa Charter Township and Township ordinance officer Sharon Stone to challenge the application of Township zoning ordinances to its 40-acre property, on which they seek to display religiously symbolic structures and host organized gatherings.  Plaintiffs asserted causes of action pursuant to 42 U.S.C. § 1983 under the Free Exercise and Free Speech Clauses of the First Amendment, U.S. Const. amend. I; the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV; and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.*

Plaintiffs moved for a preliminary injunction, which the district court denied with respect to the religious displays and granted with respect to the prohibition on organized gatherings. Plaintiffs and Defendants cross-appealed.  As to the prohibition on organized gatherings, I agree with the majority's decision to affirm the district court's grant of a preliminary injunction. I likewise agree with the majority's decision to reverse the district court's denial of a preliminary injunction with respect to the religious displays, and write separately to expand on the legal standard governing RLUIPA claims.

**DISCUSSION**

"Four factors determine when a court should grant a preliminary injunction: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest." *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326 (6th Cir. 2019) (citation omitted).  In cases involving the alleged violation of free-exercise rights—including RLUIPA cases—courts typically treat a plaintiff's showing of likelihood of success on the merits as dispositive.  *See Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020) ("Preliminary injunctions in constitutional cases often turn on likelihood of success on the merits, usually making it unnecessary to dwell on the remaining three factors."); *see also Doster v. Kendall*, 54 F.4th 398, 428 (6th Cir. 2022)

("Because RFRA protects the same bedrock free-exercise rights, the same rule necessarily applies to it."). As the majority recognizes, we turn first to Plaintiffs' statutory claim under RLUIPA. Where, as in this case, Plaintiffs' statutory claim under RLUIPA justifies the injunction, we need not address Plaintiffs' constitutional claims. *See Doster*, 54 F.4th at 410 (holding that since the plaintiffs' statutory claims alone justified the injunction, then "[u]nder traditional principles of constitutional avoidance, [the Court] need not address" the plaintiffs' constitutional claims).

Accordingly, the key question of this appeal is whether Plaintiffs are likely to succeed on their RLUIPA claim. Congress enacted RLUIPA, which protects individuals and religious institutions from discrimination in zoning and landmarking laws, to provide "broad protection for religious liberty." *Holt v. Hobbs*, 574 U.S. 352, 356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)). The statute mandates that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution," unless the government can satisfy strict scrutiny. 42 U.S.C. § 2000cc(a)(1). This requires showing that the burden imposed on the person or institution "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." *Id.* § 2000cc(a)(1)(A)–(B).

## I. Substantial Burden

To succeed on a RLUIPA claim, the plaintiff bears the initial burden of proving that the challenged land use regulation implicates the plaintiff's religious exercise, and that the regulation substantially burdened their exercise of religion. *Holt*, 574 U.S. at 360–61. Under RLUIPA, a burden must have some degree of severity to be considered "substantial." *Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1003 (6th Cir. 2017). The substantiality requirement is necessary "in order to avoid an interpretation of RLUIPA that would exempt religious institutions from all land-use regulations." *Id.*; *see also Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 736 (6th Cir. 2007) ("If the term 'substantial burden' is not to be read out of the statute, RLUIPA cannot stand for the proposition that a construction plan is

immune from a town's zoning ordinance simply because the institution undertaking the construction pursues a religious mission.").

This Court has identified several factors that are helpful in determining whether a land-use regulation has imposed a substantial burden on a religious institution: (1) "whether the religious institution has a feasible alternative location from which it can carry on its mission;" (2) "whether the religious institution will suffer 'substantial delay, uncertainty, and expense' due to the imposition of the regulation;" and (3) whether "a plaintiff has imposed a burden upon itself." *Livingston*, 858 F.3d at 1004 (citations omitted).

In *Livingston*, applying these factors, the Court affirmed the district court's conclusion that a substantial burden did not exist based on the denial of the plaintiff's application to lease a church building to locate a religious school. *Id.* at 1005. The Court reasoned that the plaintiff had an alternative property at which to locate its school, and that the plaintiff had not put forth evidence showing that the alternative location was inadequate or that any of the plaintiff's core religious functions could not be carried out at the alternative location. *Id.* at 1008.

Similarly, in *Living Water*, the Court reversed the district court's conclusion that a substantial burden existed. The plaintiff in *Living Water* was a church that wanted to construct an additional building on its property for use as a religious school and additional space for the church. 258 F. App'x at 731. A special-use permit was needed for the building in order for it to operate as a school on residentially zoned property. *Id.* at 730. The special-use permit limited the size of the building, thwarting the church's efforts to construct a building of a larger size. *Id.* at 731–32. The Court held that the church had not been substantially burdened because the church could still construct a school building, and the church had not set forth evidence showing that a building of the permitted size would be so inadequate for its religious purposes as to constitute a substantial burden. *Id.* at 739.

By contrast, in *DiLaura v. Township of Ann Arbor*, 112 F. App'x 445 (6th Cir. 2004), the Court affirmed the district court's conclusion that a substantial burden existed based on a zoning ordinance that required the plaintiffs, who wanted to establish an overnight religious retreat, to operate as a bed-and-breakfast establishment. *Id*. at 446. As a bed-and-breakfast establishment,

the plaintiffs could not serve Communion wine and meals other than breakfast, and were required to charge their guests a fee for lodging. *Id.* Because the plaintiffs' plan was to operate a prayer retreat that would provide free lodging, and to serve lunch, dinner, and Communion wine, the court found that the plaintiffs would be "effectively barred . . . from using the property in the exercise of their religion" if their property were designated as a bed and breakfast. *Id.*

Turning to the facts of the instant case, Plaintiffs are likely to be able to show that the Township's application of its zoning ordinances as to Catholic Healthcare imposes a substantial burden. As to the first factor, whether Catholic Healthcare has a feasible alternative location from which it can carry on its mission, it does not. Catholic Healthcare acquired the wooded property with the intention to develop it into a prayer campus, including an adoration chapel, prayer trails, and the display of religious symbols. No other feasible alternative location has been identified from which Catholic Healthcare can carry out this religious mission. The Township notes that Catholic Healthcare has been able to host events at Holy Spirit Church in Brighton, Michigan. However, Catholic Healthcare does not own that church, and moreover the church lacks the qualities which make the property at issue suitable for a prayer campus. As the local coordinator for Catholic Healthcare attested: "The existing trails and the wooded and rural nature of the property provide a great place to pray and worship. The [Catholic Healthcare] Property is unique. There is no comparable place like it in the Township or in the surrounding area." O'Reilly Decl., R. 76-2, PageID #3940. The Township fails to explain how the existence of another church, which has permitted Catholic Healthcare to host some events, constitutes an adequate alternative location for Catholic Healthcare's religious aim of creating a prayer campus.

Relevant to its suitability for a prayer campus, there is a significance difference between Holy Spirit Church (were we to assume that Catholic Healthcare were able to obtain a right to use it) and a large, wooded property. This difference stands in stark contrast to *Livingston*, wherein the Court determined that placing the religious school at the alternative location rather than the desired location did not significantly diminish the plaintiff's ability to carry out its core religious functions. *Livingston*, 858 F.3d at 1008. Similarly, this case is also distinguishable from *Living Water*, in which the land use regulation at issue related only to the size of the building which the plaintiff could build as its religious school, because the land use regulation at

issue in this case prevents Catholic Healthcare from installing the religious display on the property at all, rather than, for instance, dictating the number or size of the religious displays.

As to the second factor, Catholic Healthcare has shown that it has suffered "substantial delay, uncertainty, and expense," *Livingston*, 858 F.3d at 1004, due to the Township's application of its zoning ordinances. Catholic Healthcare acquired the property and first applied for a special use permit in 2020, but after years of administrative proceedings still has been unable to obtain permission to erect the desired religious displays on the property. Catholic Healthcare's first application cost more than $30,000 to prepare, and its second application, which the Township denied on purely procedural grounds, cost more than $8,000.

Finally, regarding the third factor, Catholic Healthcare has not imposed a burden upon itself. "[W]hen an institutional plaintiff has obtained an interest in land without a reasonable expectation of being able to use that land for religious purposes, the hardship that it suffered when the land-use regulations were enforced against it has been deemed an insubstantial burden." *Livingston*, 858 F.3d at 1004 (citing cases). However, Catholic Healthcare's expectation that it could use the property for a prayer campus at the time it acquired the property was not unreasonable. As the majority opinion sets out, the ordinary meaning of the word "church," as well as the zoning ordinance's definition, did not give notice to Catholic Healthcare that its plan to install religious displays on the property would be subject to the same onerous review process as required for obtaining a special use permit for building a church. *See* Maj. Op. at 9–10.

Accordingly, Plaintiffs are likely to be able to prove that the Township's enforcement of its zoning ordinances imposes a substantial burden. Once Plaintiffs have met that burden, the burden shifts to Defendants to show that the land use restriction is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc(a)(1)(A)–(B); *Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022) (noting that this allocation of respective burdens applies in the preliminary injunction context).

## II.  The Township's Interests

To justify a land use regulation that imposes a substantial burden on religious exercise, the government must demonstrate that the imposition of that burden "is in furtherance of a compelling governmental interest."  42 U.S.C. § 2000cc(a)(1)(A).  In analyzing a RLUIPA claim, courts cannot "rely on 'broadly formulated interests,'" but rather must "'scrutinize[] the asserted harm'" as it applies to particular religious claimants.  *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021) (quoting *Gonzales v. O Centro Espírita Beneficente União de Vegetal*, 546 U.S. 418, 431 (2006)); *see also Holt*, 574 U.S. at 362–363 (RLUIPA requires courts to "scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants" (internal quotation marks omitted)).  Under strict scrutiny, "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881; *Mast v. Fillmore Cnty.*, 141 S. Ct. 2430, 2432 (2021) (Gorsuch, J., concurring) (noting that RLUIPA "requires the application of 'strict scrutiny'").

The Township does not identify the governmental interests that are served by its special land use permitting process, let alone explain why its presumed interests are compelling.  But in any event, the question is not whether the Township has a compelling interest in enforcing its special land use permit process for church building in general, but rather whether it has such an interest in requiring Catholic Healthcare to undertake that process solely with respect to the religious displays.  As Plaintiffs point out, other structures are allowed in the Township that do not go through this special land use permitting process.  For instance, the Township charges $50 for a permit for a private residence to install an accessory structure.  It is hard to imagine a compelling interest that would require a religious institution to undergo a lengthy and expensive permitting process in order to install religious displays, but which would not require the same for structures at private residences.

If a compelling governmental interest supports a land use regulation, then the government must next show that the regulation constitutes "the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc(a)(1)(B).  Without an understanding of the governmental interests implicated in requiring Catholic Healthcare to obtain a special land

use permit for the religious displays, it is difficult to analyze whether the special land use permit constitutes the least restrictive means of furthering those interests. But "[t]he least-restrictive-means standard is exceptionally demanding." *Hobby Lobby*, 573 U.S. at 728. The Township has presented no reason to conclude that it meets this standard in this case.

## CONCLUSION

Plaintiffs have shown they are likely to succeed on their RLUIPA claim because they have shown they can likely prove that the Township has imposed a substantial burden on Catholic Healthcare's religious exercise, and the Township has not rebutted that showing because it failed to make any showing that its land use regulation is the least restrictive means of furthering a compelling governmental interest. Given Plaintiffs' showing of a likelihood of success on the merits on the RLUIPA claim, and the dispositive nature of that showing in the context of claims involving free-exercise rights, *Doster*, 54 F.4th at 428, Plaintiffs are entitled to a preliminary injunction with respect to the religious displays. I therefore respectfully concur with the majority on this point.